## I. WILLIAM PARKER v. STATE OF MARYLAND

[No. 17, October Term, 1947.]

*Decided November 13, 1947.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Hamilton P. Fox, Jr.,* with whom was *Ernest C. Clark* and *Charles E. Hearne, Jr.,* on the brief, for the appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General,* and *Rex A. Taylor, State's Attorney for Wicomico County,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a judgment on conviction of bastardy. The defendant, besides denying any illicit relations with the prosecuting witness, set up the defense that at the time of the alleged offense he was physically incapable of reproduction. This seems to be a novel defense, but if proved would obviously be conclusive. The only questions now presented are whether the medical

testimony on this subject, offered or proffered, was properly excluded.

The alleged offense was committed on or about March 17, 1946. The trial was about a year later. Defendant testified that once only, about ten years ago, he had gonorrhea, "a bad case," he "thought it was pretty bad; it hurt enough"; it lasted about six months; his organs were swollen; he was treated for about six months by a physician said to be now dead; on the day of the trial Dr. McCullough, a physician and pathologist, made a "sterilization examination and diagnosis"; when he was examined he gave Dr. McCullough his "full case history with respect to gonorrhea," and answered all the questions asked him. With the exception of the testimony above mentioned, there is no evidence what "case history" he gave Dr. McCullough or what questions he was asked. Dr. McCullough testified that he made a "semen examination" and took defendant's "case history * * * with respect to gonorrhea and other matters pertaining to gonorrhea and sterility."

Dr. McCullough was asked, Q. (1, 10) from his knowledge and experience, the effect, if any, of gonorrhea as to sterility; (11, 12) the case history of defendant "with respect to gonorrhea and other matters · pertaining to gonorrhea and sterility"; (13) whether from his examination he could say whether or not defendant had ever been operated on for the purpose of sterilization; (15) with respect to sterility, what his examination disclosed "as of" the present time; based on the testimony of defendant and the case history obtained from him, (18) whether he was in a position to give an opinion as to the cause of his present sterility, (19) whether in his opinion his present sterility existed two years ago, and (20) whether defendant was sterile on March 17, 1946. All these questions were excluded.

Defendant made a proffer, which was also excluded, to show through Dr. McCullough that "yesterday" a physical examination was made on defendant; that at the same time Dr. McCullough obtained the full case his-

tory of defendant and examined defendant to determine whether or not he had ever been operated on for the purpose of rendering himself sterile; that gonorrhea such as defendant had ten years ago in many cases will render a person sterile for life; that, based on defendant's case history and his testimony that he had never had gonorrhea in the past ten years, a man of defendant's age, because of nature, would not ordinarily become sterile within the last two years, and would not have become sterile subsequent to March 17, 1946; that defendant "was not capable of conception" on March 17, 1946.

From elementary sources of which perhaps judicial notice may be taken, it appears that gonorrhea may cause sterility in a man (*Smith, Forensic Medicine,* 1925, page 218), and that "healthy spermatozoa" are essential to fertility, "it is estimated that in 25 percent of childless marriages the man is at fault," and "experimentation with laboratory animals has shown that infecundity may result from deficiency of the reproductive vitamin E." 21 *Encyclopaedia Brittanica,* 398. These statements are hardly less definite than the proffer in this case, as to when gonorrhea will cause sterility and when sterility is permanent and incurable. It would seem that sterility due to vitamin deficiency might be temporary and curable and might even be self-induced.

"The law requires proof of probable, not merely possible, facts, including causal relations.  *  *  *  But sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause." *Charlton Bros. Transp. Co. v. Garrettson,* 188 Md. 85, 51 A. 2d 642, 646. In some circumstances, expert opinion as to possibility may corroborate direct evidence of cause (*Langenfelder v. Thompson,* 179 Md. 502, 507, 20 A. 2d 491, 136 A. L. R. 960) or a chain of evidence of possibilities may show probability or at least corroborate direct evidence (*Shanks v. State,* 185 Md. 437, 45 A. 2d 85, 163 A. L. R. 931. *Cf. Bethlehem-Sparrows Point Shipyard v. Bishop,* 189 Md. 147, 55 A. 2d 507.

In the case at bar direct evidence of the normal relation of cause and effect is met with an attempt to prove impossibility, *i. e.*, physical incapacity. The only direct evidence offered or proffered is (*a*) a "bad case" of gonorrhea nine years before the offense and (*b*) present incapacity a year after. Expert opinion (*a*) that "such" gonorrhea "in many cases" will render a person sterile for life and (*b*) except from that cause a man of defendant's age, because of nature, would not "ordinarily" become sterile within the last two years, is proffered to show probable causal connection between present incapacity and the disease ten years ago and to establish probable incapacity on March 17, 1946.

Without a statement of the expert's reasons for his opinion, we are unable to say that the causal connection and the conclusion are more than possibilities or guesses. We think, however, that defendant was entitled to show the fact of present incapacity and follow it up (if he could) by proof of causal connection sufficient to show probable incapacity on March 17, 1946. All the testimony in a chain cannot be offered at the same moment. A proffer of testimony need not be encyclopaedic in details. Before permitting the expert to express his opinion, the court may permit cross-examination as to the factual and scientific basis for the causal connection and the conclusion, and if the basis is legally insufficient, may exclude the opinion. Testimony, including opinions, admitted subject to exception, may be stricken out if on cross-examination it is shown to be legally insufficient. In will cases the opinion of an attending physician as to mental capacity is admissible without statement of reasons for the opinion, but if on cross-examination the reasons are shown to be legally insufficient, the court must so instruct the jury. *Davidove v. Duvall*, 160 Md. 345, 352, 353, 153 A. 417; *Baugher v. Gessell*, 103 Md. 450, 63 A. 1078; *Horner v. Buckingham*, 103 Md. 556, 64 A. 41.

We think that all questions to Dr. McCullough relating to defendant's "case history" obtained by the witness

from defendant (12, 18, 19, 20) were propely excluded. In *Yellow Cab Co. v. Henderson*, 183 Md. 546, 552, 553, 39 A. 2d 546, 550, it was held, quoting *Wigmore* (3rd Ed., sec. 688), that "When a physician examines a patient to ascertain his ailment and to prescribe for it, a portion of his reasons for action must be the patient's own statement. To exclude testimony not wholly independent of this foundation for opinion is, in strictness, to exclude almost always medical testimony based on a personal examination." Wigmore says those who object to testimony of this sort "must expect to surrender the medical witness-stand to veterinary surgeons exclusively," a generalization apparently subject to exceptions in the case of young children and other inarticulate patients. He disapproves distinction between statements by the patient of present and of past symptoms.

In the *Henderson* case this court left open the question whether the opinion of the physician is admissible when it is based upon the "case history" given him, not by a patient for the purpose of obtaining treatment, but by a litigant for the purpose of qualifying the physician to testify as a medical expert. Wigmore does not discuss the distinction between a patient and a litigant, but cites cases as making the distinction. Sec. 688, note 6. We think exclusion of medical testimony based on statements by "patients" who are not patients is supported by sound reasons and by the weight of authority. "It may be seen that, when attended by a physician for the purpose of treatment, there is a strong inducement for the patient to speak truly of his pains and sufferings, while it may be otherwise when medically examined for the purpose of creating evidence in his own behalf." *Davidson v. Cornell*, 132 N. Y. 228, 237, 30 N. E. 573, 576. These considerations are illustrated in the case at bar. Defendant was not seeking treatment and cure. He may not even have desired to cure an alleged incapacity which did not prevent the offense charged but prevented the consequence which makes the offense punishable. In the case of a *bona fide* patient, the physician may be better able than

the patient to remember the material facts of the "case history." In the case at bar the "case history" was ten years old and defendant was examined by the expert on the day of the trial. It would seem that he could just as readily have given his "case history" as a witness, subject to cross-examination. The expert could testify hypothetically on the basis of defendant's testimony, to the same extent as if permitted to testify on the basis of the "case history" otherwise obtained. Many cases, most of them approving exclusion of the testimony now in question, are collected in notes in 65 *A. L. R.* 1217, 67 *A. L. R.* 10, 80 *A. L. R.* 977, 130 *A. L. R.* 977.

For exclusion of the medical testimony not relating to the "case history," the judgment must be reversed.

*Judgment reversed, and new trial awarded.*