## JEWEL TEA CO., INC. *v.* BLAMBLE

[No. 50, September Term, 1961.]

*Decided November 15, 1961.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*William H. Geppert* and *Hugh A. McMullen,* with whom were *Gunter* and *Geppert* on the brief, for the appellant.

*Simon F. Reilly,* with whom was *Peter J. Carpenti* on the brief, for the appellee.

SYBERT, J., delivered the opinion of the Court.

This appeal raises the question whether, in a Workmen's Compensation case, the trial court properly permitted the jury to determine, on the basis of subjective lay testimony, that the employee was 100 per cent disabled when all the expert medical testimony in the case was to the contrary. From a judgment entered on the jury's verdict of 100 per cent disability, the employer appeals.

The facts are undisputed. Appellee, Josephine Blamble, was employed as a door to door saleslady by the appellant, Jewel Tea Company, Inc. While making a call in the village of Eckhart Mines on August 7, 1959, she fell down three steps of a residence and suffered a broken left ankle and a sprained right ankle. She was taken immediately to a hospital in Cumberland where her left ankle was set and a cast applied. After four days of complete bed rest she was taken to the physical therapy department for instruction in crutch ambulation and while being fitted for crutches she suffered a heart attack. She remained in the hospital two months before being sent home for an additional period of convalescence.

At a hearing before the Workmen's Compensation Commission to determine the extent of Mrs. Blamble's disability

the only medical testimony was given by the claimant's attending physician, Dr. George O. Himmelwright, a general practitioner, who stated that in his opinion Mrs. Blamble had suffered a myocardial infarction as a result of the crutch-training episode, and that "she is disabled a hundred per cent". When asked whether he felt she could engage in any kind of employment, his answer was: "Limited sir. I feel if she could sit down at something maybe three or four hours a day, yes, maybe with a rest period in between." The Commission determined that Mrs. Blamble had sustained an accidental injury arising out of and in the course of her employment and as a result was temporarily totally disabled from August 7, 1959 to October 1, 1959, inclusive. It further found that she had become permanently totally disabled, 60 per cent being reasonably attributable to the accidental injury and 40 per cent being attributable to a pre-existing condition.

Both parties appealed from this determination to the Circuit Court for Allegany County, where the case was tried before a jury. Dr. Himmelwright's testimony before the Commission was read into evidence. He also appeared as a witness, as did Dr. Samuel M. Jacobson, a cardiologist, both called by the appellant. At the close of the case the employer offered a prayer requesting the court to instruct the jury that from the uncontradicted evidence it could not find that Mrs. Blamble was 100 per cent disabled, which was denied and the denial excepted to. The jury returned a finding on issues that Mrs. Blamble was permanently totally disabled, 100 per cent of which was due to the accident and none due to a pre-existing disease, and the decision of the Commission was so modified. In its appeal from the resulting judgment the employer cites as error the refusal of the trial court to instruct the jury as requested in its prayer.

The leading Maryland case establishing the test of what constitutes "total disability" within § 36 of Art. 101, Code (1959 Cum. Supp.) is *Congoleum Nairn v. Brown,* 158 Md. 285, 148 Atl. 220 (1930). There this Court held that total disability means incapacity to do work of *any* kind, and not mere incapacity to perform that work which the employee was accustomed and qualified to perform before the injury.

4

(Compare views of other states in 16 Univ. of Detroit Law Jour., pp. 52-53 [1952].) In view of this definition, the question to be determined is whether there was sufficient evidence that Mrs. Blamble was unable to perform work of any kind, to justify submission of the issue of total disability to the jury.

The general rule in Workmen's Compensation cases is that where there is *any* evidence from which a rational conclusion may be drawn, as opposed to the theory of a prayer for a directed verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence. *Superior Builders, Inc. v. Brown,* 208 Md. 539, 119 A. 2d 376 (1956); *Martin G. Imbach, Inc. v. Tate,* 203 Md. 348, 100 A. 2d 808 (1953). Where this Court has before it a claim for permanent disability, the determinative question as to whether there was sufficient evidence of permanency to justify the trial court's submission of this issue to the jury is not whether this Court would have reached the same conclusion on the evidence as the jury arrived at, but whether there was *legally* sufficient evidence, if believed, to enable the jury to make the findings it did make. *Baughman Co. v. Mellott,* 216 Md. 278, 139 A. 2d 852 (1958). The rule that mere possibilities, conjecture or speculation cannot form the basis of a jury verdict, in a personal injury case, *Ager v. Baltimore Transit Co.,* 213 Md. 414, 132 A. 2d 469 (1957), has also been cited in reference to workmen's compensation cases. *Baughman Co. v. Mellott, supra.*

The evidence produced on behalf of Mrs. Blamble's claim does not, in our opinion, meet the test of legal sufficiency under the authorities cited. Rather, the evidence as a whole leads to the conclusion that Mrs. Blamble was not in fact totally disabled as that term is defined in our Compensation act.

Examining first the evidence supporting Mrs. Blamble's claim, we find the testimony of the appellee herself to the effect that she did not feel she could go back to work, that she could not climb steps and had certain feelings of heaviness in her heart and down her arm. She bases her conclusion not upon any attempt she has made to work but only on

her own personal feelings and certain experiences around the house and in a department store, where she said she got sick and had to place two heart tablets under her tongue. She admitted that Dr. Himmelwright told her she "could get a job sitting down with a little bit of rest in between". There was also the testimony of Mrs. Blamble's landlady, who had an apartment next to the appellee's, that Mrs. Blamble is "in very delicate health" and unable to do her own housework or cooking. The testimony of Dr. Himmelwright before the Commission, that appellee was disabled a hundred per cent, was relied on heavily by appellee. But it is important to note that even at that hearing he was of the opinion that, while her possibilities of employment were limited, "she could sit down at something maybe three or four hours a day, yes, maybe with a rest period in between." It is apparent that Dr. Himmelwright's statement before the Commission that she was disabled one hundred per cent did not meet the legal requirements of that term when his testimony is considered as a whole. At the trial itself Dr. Himmelwright again expressed the opinion that Mrs. Blamble "could do sedentary work as long as it wasn't too strenuous". He also testified that her condition at that time "shows evidence of healing and she shows much improvement". He was not directly asked his opinion as to the extent of Mrs. Blamble's disability but when referred to his statement before the Commission that she was "disabled one hundred percent" he stated, "That was my opinion *then*." (Emphasis supplied.)

Dr. Jacobson, the cardiologist, stated that on the basis of his personal examination of Mrs. Blamble and a study of an electrocardiogram, taken as part of his examination, he could find no evidence of heart disease, though this did not absolutely rule out the possibility of such disease. In his opinion Mrs. Blamble very likely did not suffer a coronary occlusion with a myocardial infarction, as diagnosed by Dr. Himmelwright. He felt it more probable that she had had an episode of paroxysmal tachycardia, which is described as "a condition marked by attacks of excessively rapid heart action which come on abruptly and terminate just as abruptly." Dorland, *Medical Dictionary,* (23rd ed.) p. 1359. Dr. Jacobson was of the

opinion that Mrs. Blamble could be re-employed and "* * * I have an idea she could do practically what she had done before * * *" in her present condition "* * * with certain limitations depending on her emotional self." In his opinion, Mrs. Blamble had no disability "* * * except emotional".

Thus, countering the lay testimony of Mrs. Blamble and her landlady that she could not work, was the testimony of her attending physician that she could do sedentary work and that of a heart specialist that she could engage in employment and possibly even return to her former position. It is to be noted that we are dealing here with a disability that to the inexperienced and inexpert witness must remain purely subjective in nature. Appellant cites authority to the effect that in disabilities of a subjective nature, evidence sufficient to warrant submission of the issue of disability to a jury must be supported by expert testimony, since it should be judicially noted that common experience does not enable lay witnesses to make objective findings upon which a verdict can rationally be based. Annotation, 115 A.L.R. 1149. See also a comprehensive article on the subject by Ivan C. Rutledge, *Medical Witnesses in Workmen's Compensation,* 32 Ind. Law Jour. 313 (Spring, 1957). Cited in 115 A.L.R. at page 1150 is the case of *Cluster v. Upton,* 165 Md. 566, 168 Atl. 882 (1933), where this Court stated (at p. 569) :

> "Prediction from present conditions of the conditions which will exist in the future may in some instances be made by a jury without the aid of opinions of experts in such matters. Common knowledge would tell them that a lost member is permanently lost (*Congoleum Nairn v. Brown,* 158 Md. 285, 289, 148 A. 220), and there may be conditions which, while less obviously permanent in their nature, may still, according to common knowledge, be probably so, with such a degree of probability that an adjudication of permanency as a fact may be permissible without expert opinions. *Washington, B. & A. Electric R. Co. v. Cross,* 142 Md. 500, 510, 121 A. 374; *United Laundries Co. v. Bradford,* 133 Md. 363, 367, 105 A. 303. There must, however, be a reliable basis

> for the adjudication of it as a fact, something be-
> yond mere conjecture, or possibility; and the burden
> is upon the plaintiff to establish the fact by evidence
> sufficient to support the finding, if he intends to in-
> clude permanent injury as an item in the ground of
> his recovery."

The injury involved in that case was a fractured finger and this Court concluded that the misshapen condition of the finger was sufficient objective evidence to allow a jury to infer a permanent injury.

It is obvious that in cases such as the one before us the experience and information secured by medical experts concerning the type, degree, extent and duration of disability attendant upon the disease involved here, and the super-imposing of their findings upon the general physical and mental condition of the patient, are invaluable. In the instant case such expert testimony was in fact, in our opinion, determinative, in contradistinction to the testimony of the lay witnesses, which, from the nature of this case, could only be conjectural.

It has been held that reliance on lay testimony alone is not justified when the medical question involved is a complicated one, involving fact finding which properly falls within the province of medical experts. *Travelers Ins. Co. v. Blazier*, 228 S. W. 2d 217 (Tex. Civ. App. 1950); *Drakulich v. Ind. Comm.*, 27 N. E. 2d 932 (Ohio 1940); 2 Larson, *Workmen's Compensation Law*, § 79.54. Cf. *Bentley v. Adams*, 128 A. 2d 202 (N. H. 1956); *Tracy v. Massachusetts Bonding & Ins. Co.*, 159 A. 2d 86 (Vt. 1960). What we have said should not be taken as indicating that we conclude that all awards in cases of injuries of a subjective nature can stand only if accompanied by definitive medical testimony, as the appellant suggests. For a discussion of this topic see 2 Larson, *Workmen's Compensation Law*, §§ 79.50, et seq. See also Beth. Steel Co. v. Ziegenfuss, 187 Md. 283, 49 A. 2d 793 (1946); *Neeld Constr. Co. v. Mason*, 157 Md. 571, 146 Atl. 748 (1929); *Gas Company v. Caler*, 157 Md. 596, 146 Atl. 750 (1929), and *Valente v. Bourne Mills*, 75 A. 2d 191 (R.I. 1950).

This Court has taken judicial notice of the fact that some persons with diseased hearts support themselves and lead useful lives for years. *Prudential Ins. Co. v. Brookman,* 167 Md. 616, 175 Atl. 838 (1934). In the absence of more compelling proof than the opinion of the employee herself and that of her landlady that she is totally disabled within the intendment of the statute, and in the light of medical opinion to the contrary, we must hold that the trial court erred in refusing to grant the appellant's prayer. In our opinion there was insufficient evidence to warrant submission to the jury of the question as to permanent total disability.

> *Judgment reversed; case remanded for a new trial; appellee to pay costs.*