RICHARD F. KLINE, INC. AND GREAT AMERI-
CAN INSURANCE CO. *v.* GROSH

[No. 536, September Term, 1965.]

238

*Decided January 26, 1967.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*Glenn C. Michel,* with whom were *Mathias, Mathias & Michel* on the brief, and *Edwin H. Miller,* with whom were *Miller, Miller & Kuczynski* on the brief, for appellants.

*Ernest V. Wachs* for appellee.

FINAN, J., delivered the opinion of the Court.

On November 11, 1960, appellee, Courtney C. Grosh (claimant below), suffered an injury to his back while attempting to lift a log during the course of his employment with the appellant Richard F. Kline, Inc., hereinafter referred to as Employer. Appellee had injured his back eight years previously while working for the Cushwa Company, as a result of which an award was made at that time by the State Industrial Accident Commission (now Workmen's Compensation Commission, hereinafter referred to as the Commission).

Appellee was examined by Dr. John Dobbie, an orthopedic surgeon, about twelve times. Dr. Dobbie's initial examination on November 18, 1960, found the appellee to be suffering from back pain which on occasion radiated into both legs. Appellee

was hospitalized and a myelogram was performed on November 26, 1960, which was negative. After the myelogram it was found that appellee was suffering from thrombo-phlebitis, a complication of surgery, which added to the disability of his left leg.

The Commission held a hearing on February 16, 1962, and found on May 2, 1962:

> "that the claimant's temporary total disability terminated on February 12, 1962, inclusive, and that the claimant, as a result of the accidental injury of November 11, 1960, sustained a permanent partial disability resulting in 25% loss of use of his left leg (thrombophlebitis) and a permanent partial disability under 'other cases' amounting to 15% industrial loss of use of his body as a result of the injury to his lumbar sacral area; 10% of such disability is reasonably attributable to the accidental injury of November 11, 1960, and 5% thereof is due to a pre-existing condition * * *."

On September 4, 1964, a hearing was conducted by the Commission on appellee's petition to reopen his case on the issue of "Nature and Extent of Disability." The petition was granted and the appellee was referred to the Commission's Chief Medical Examiner, Dr. James N. Cianos. Dr. Cianos examined the appellee on September 16, 1964, and found "that he had a disability of 65% of the body and 35% of the left leg."

Dr. Dobbie's final examination took place on June 8, 1964, and he found appellee improved from the time of his 1960 examination and that "most of his complaints were out of proportion of (sic) his physical findings and we had no further suggestions for treatment." It was Dr. Dobbie's opinion that appellee had a 10% disability of his back and he declined to make any assessment as to the extent of disability of the left leg.

On October 8, 1964, the Commission found that "the claimant's temporary total disability terminated on October 2, 1963, inclusive, and that the claimant, as a result of the accidental injury of November 11, 1960, has now become permanently totally disabled" and ordered the Employer and the Great Ameri-

can Insurance Co., Insurer, (appellants) to pay appellee "compensation for permanent total disability at the rate of $36.00, payable weekly, * * * not to exceed the sum of $30,000.00; * * *."

The Employer and Insurer appealed this award to the Circuit Court for Washington County asking that it review the decision of the Commission on the grounds that the medical evidence did not support a finding of permanent total disability and that the Commission erred in not considering and allowing an apportionment of the disability attributable to pre-existing conditions.

The jury heard the case on August 30, 1965. At the conclusion of the case, the appellants moved the court to remand the case to the Commission for further proceedings on the ground that it was apparent on the face of the record that the appellee "had a 5% disability from a pre-existing injury" and that under Art. 101, § 66(1) Code (1957), the Employer should not have been liable for the entire award, as that portion of the disability attributable to a pre-existing injury should have been assessed against the Subsequent Injury Fund, and that the provisions of the Workmen's Compensation Law relating to the Subsequent Injury Fund, required the Commission, when it appears that the Fund may be assessed, to notify the Attorney General to represent the Fund (Art. 101, § 66(5)) and also to place the Fund on notice. The appellants contended that the Commission had failed to follow this procedure; that this constituted error, which substantially prejudiced their rights.

It was stipulated by counsel that a decision on this motion should be reserved until the jury brought in its findings on the issues. The court ultimately refused to grant this motion, ruling that the provisions of the Workmen's Compensation Law embracing the Subsequent Injury Fund (Art. 101, § 66) had no application to the instant case.

The appellants also excepted to the court's rejection of its prayers, Nos. 2 and 3, relating to what constitutes permanent total disability within the meaning of the Workmen's Compensation Law. However, the court did grant its No. 1 prayer concerning this question and incorporated it into its instructions to the jury, which will be discussed elsewhere in this opinion.

The appellants also took exception to that portion of the court's instruction to the jury wherein it specifically mentioned the amount of money which the claimant would be paid in the event the jury found he was not permanently disabled, as contrasted with the amount which he would receive were he found to be totally disabled, claiming that the mention of the lesser amount constituted prejudicial error.

The appellants also filed motions for a new trial and for judgment n.o.v., both of which were denied.

Upon appeal the appellants assigned the following errors: (1) the failure of the court to grant its motion to remand the proceedings to the Commission for a proper apportionment of the award; (2) the court's refusal to grant its prayers Nos. 2 and 3; (3) the court's refusal to grant its motion for a directed verdict; (4) the court's refusal to grant its motion for a judgment n.o.v.; and (5) that portion of the instructions which informed the jury of the monetary consequences to the appellee should they find him not to be permanently totally disabled.

I

We are of the opinion that the court below was correct in its refusal to remand these proceedings to the Commission for consideration of the question of apportionment under § 66 of Art. 101, referred to as the Subsequent Injury Fund. We agree with the holding of the lower court that the provisions of the Subsequent Injury Fund have no application to this case. As was noted by Judge McLaughlin in the court below, Ch. 809 of the Acts of the General Assembly of 1963, which created the Subsequent Injury Fund, specifically provides that its effect shall be prospective only, the language of the Statute reading:

"Sec. 2. *And be it further enacted,* That the provisions of this Act shall only be construed prospectively and shall not be applied or interpreted to have any retrospective effect."

In this case the subsequent injury occurred on November 11, 1960; the effective date of the Subsequent Injury Fund Act was June 1, 1963.

There is a provision in the Subsequent Injury Fund Act which requires some explanation for a better understanding of

this case and it deals with those injuries which would have come under the Second Injury Fund, had such Fund continued in existence after the effective date of the Subsequent Injury Fund Act, the former Fund being discontinued after the effective date of the latter Act. This provision which is part of subsection 4 of § 66 of Art. 101, provides as follows:

"All funds in the Second Injury Fund as it existed on June 1, 1963, shall thereafter be transferred to the Subsequent Injury Fund which was created on this date; provided, that the Subsequent Injury Fund shall assume the defense and a payment of all claims made against the Second Injury Fund for injuries which arose prior to June 1, 1963."

However, applying the last quoted provision to the case at bar, we find that it, also, is not applicable because the first injury for which the claimant received an award, occurring while he was employed by the Cushwa Company prior to 1952, was not to any specifically named limb, organ or member of the body listed in the Second Injury Fund Act (Acts of 1945, Ch. 637). Accordingly, any contention that there should be an apportionment of the award from either of these funds is without merit. Since the Subsequent Injury Fund provisions are not applicable, it was not necessary for the Commission to notify the Attorney General that he should represent the Fund in the proceedings.

The appellants also contend that the case should have been remanded to the Commission for a further apportionment of that part of the award attributable to pre-existing conditions. The appellants advance a novel proposition, arguing that the 5% portion of the 15% disability to the back, which the Commission in its award of May 2, 1962, attributed to pre-existing conditions, continued to play an ambient role until now it represents a 21.7% disability. Their argument is that at the time of the award of the 15% disability to the back under "Other Cases," the 5% attributable to pre-existing conditions represented one-third of the disability to the back; that the later award of permanent total disability, rendered by the Commission on October 8, 1964, when the case was reopened, was

predicated on Dr. Cianos' evaluation that the appellee sustained a 65% loss of the body and 35% loss of the use of the leg; that the loss of use of the body was attributable to the disability to the back, *ergo,* one-third of the 65% loss of use of the body or 21.7% should be attributable to pre-existing conditions.

This specious reasoning is based on the speculative assumption that the 65% loss of use of the body is all attributable to the back, to the exclusion of any consideration as to how the 35% disability to the leg might affect the body as a whole. There is also the real possibility the injury which occurred prior to 1952 and which resulted in the 5% disability to the back, might still properly be considered as contributing only 5% to the present disability of the back or for that matter to the body as a whole. In either event it is not a valid contention.

## II

The lower court's rejection of appellants' prayers Nos. 2[1] and 3[2] was not prejudicial. The court fairly and completely covered the law, relating to what constitutes permanent total disability, in its instructions to the jury, in which it incorporated the appellants' prayer No. 3 and which instruction read in part:

> "total disability means incapacity to do work of any kind and not mere incapacity to perform that work which the employee was accustomed and qualified to

---

1. "The Court instructs the jury that notwithstanding testimony of lay witnesses in this case, that if they find on the uncontradicted testimony of medical witnesses, that the plaintiff, Courtney C. Grosh, is capable of performing work of some kind, then the jury cannot find that the permanent disability contended by the plaintiff, Courtney C. Grosh, is total, so that on this there is no legally sufficient evidence."

2. "The Court instructs the jury that if it find that the plaintiff, Courtney C. Grosh, notwithstanding his subjective testimony, is capable of performing work of any kind, be it only for a limited duration during the day, or performed in a sedentary manner, then the verdict of the jury must be in favor of the defendant in finding that the alleged permanent disability of the plaintiff, Courtney C. Grosh, is not 'total.'"

perform before the injury. So what you have to decide here is whether or not there is evidence to show that Claimant is not able to perform; that he is so disabled that he is incapable of performing work of any kind."

This instruction is in keeping with the test for permanent total disability adopted by this Court in *Congoleum Nairn v. Brown*, 158 Md. 285, 287-88, 148 A. 220, 221, 67 A.L.R. 780, 782-83 (1930); and followed in *Mureddu v. Gentile*, 233 Md. 216, 220, 196 A. 2d 82, 84 (1964) and *Jewel Tea Co. v. Blamble*, 227 Md. 1, 3, 174 A. 2d 764, 765 (1961).

### III and IV

The court below was also right in refusing to grant the appellants' motions requesting a directed verdict and for judgment n.o.v. We will treat these motions together because the appellants' arguments in support of them were basically the same.

The Workmen's Compensation Law provides that an award of the Commission shall be presumed to be correct and that the party appealing from the award has the burden of proving that the Commission was in error (Art. 101, § 56(c)). This Court has also on other occasions stated that:

"The general rule in Workmen's Compensation cases is that where there is *any* evidence from which a rational conclusion may be drawn, as opposed to the theory of a prayer for a directed verdict, the trial court must leave to the jury all considerations as to the weight and value of such evidence." *Jewel Tea Co. v. Blamble, supra,* 4, 174 A. 2d 765.

Applying this principle to this case, we find, as is the situation in most such cases, that we are confronted with two very divergent medical opinions. Here we have that of Dr. Dobbie, who testified for the appellants and the testimony of Dr. Cianos, medical examiner for the Commission. Normally, this case would fall somewhere between the facts of *Jewel Tea Co., supra,* wherein this Court found that the medical evidence, as to permanent total disability, was insufficient to permit the case

to go to the jury and *Mureddu v. Gentile, supra,* wherein the Court found that the medical evidence presented offered rational conclusions concerning the question of permanent total disability, which were within the purview of consideration by the jury.

Although we are of the opinion that this case approaches more closely *Mureddu* than *Jewel Tea,* there is another cogent reason why the medical testimony in this case, as to permanent total disability, was sufficient properly to pose a question to be determined by the jury. In this case the appellants in the court below failed to present any medical testimony on the evaluation of the disability of the appellee's left leg and, *a fortiori,* they had no testimony as to the effect that such a disability might, or might not, have on the appellee's body as a whole. To use the vernacular, this was tantamount to playing a ball game without all the bases covered. Dr. Dobbie testified that "as a result of his accident he [appellee] had ten per cent physical impairment to his back." He then continued with his testimony, stating:

> "I might also say that this man also had a leg that has thrombo-phlebitis, which I, as an orthopedic man do not treat. I am aware that the man had it and I saw him on several occasions with this, but I am not taking this into consideration in my evaluation of his back."

Upon further questioning, he opined:

> Q. Do you have an opinion as to the disability in his leg?
> A. No sir, I don't think I am capable in determining the disability of his leg.

By contrast, Dr. Cianos, called as a medical witness by the appellee, went into detail as to the condition of the left leg, concluding that appellee had a 35% disability to this leg.

It would needlessly prolong this opinion to detail the various medical tests which both doctors made on the appellee justifying their evaluations. It suffices to say, that in sum, they presented a proper question for consideration by the jury as to

whether or not the appellee sustained a permanent total disability.

As to the work which the appellee is now capable of performing, Dr. Dobbie gave no testimony as to the type of employment to which he may be suited. Dr. Cianos touched on this on cross-examination as follows:

Q. Let me put it this way, Doctor. Have you ever examined any people who were working and had anatomical findings, the same as Mr. Grosh?

A. Yes.

Q. And they were gainfully employed?

A. If they were able to do a type of work that did not entail heavy physical work or even moderately heavy physical work. Of course, he could sit down and write, or he could sit on an elevator stool and take an elevator up and down.

Counsel for the appellants in his argument stressed the fact that the appellee could drive a car and in his testimony the appellee did state that he could drive a car all day without difficulty; that he cut his own grass and helped his wife wipe the dishes. Yet, these accomplishments were recited as maximal endeavors. Certainly, in the labor market of our present society, such skills, if they may be called that, representing ultimate potential, are scarcely qualifications gratifying to a personnel manager, a shop foreman or a straw boss.

It was within the province of the jury to consider all of the medical facts coupled with the factors of the appellee's age of 63 years, his limited skills, the type of work he had done all of his life, the fact that he must wear a back brace, that he cannot lift or bend and walks with visible difficulty, to arrive at an assessment of the extent of his disability. Accordingly, the court below properly refused the appellants' motions for a directed verdict and for judgment n.o.v.

V

As was noted by the lower court, it was unfortunate that any allusion to dollar amounts coupled with the percentage of disability was made in the presence of the jury, for they were concerned only with the assessment of the percentage of dis-

ability, total or otherwise. The Statute spells out the monetary compensation. However, by all accounts, counsel for the appellants, who now complains of the court's instructions, was the first to inject any dollar figures into the case, when, in his opening statement, he called the jury's attention to the fact that an award of permanent total disability called for the payment of $30,000.[3]

Subsequently, the court in its instructions felt it incumbent to explain to the jury that in addition to the $30,000 provided for permanent total disability that $12,500 was the maximum sum payable under "Other Cases" and the manner in which the percentage of disability was translated into compensation. In any event, the court clearly admonished the jury to disregard any monetary sums in their deliberations. We are of the opinion that the trial judge did the best he could to rectify any prejudice or confusion which the intrusion of dollar amounts, originally injected by the appellants, may have caused.

This Court must still dispose of the question of the credit which should be given to the appellants representing the 5% disability attributable to pre-existing conditions. The issue submitted to the jury was "Is the claimant, Courtney C. Grosh, permanently totally disabled as a result of an accident in his employment on November 11, 1960?"; the jury answered in the affirmative.

However, the record firmly establishes the existence of the 5% disability due to pre-existing conditions. The court below was well aware of this and in its memorandum made note of this stating:

> "However, as to apportionment, my duties are considerably relieved as counsel for Claimant advised * * * that he would be willing to give credit for the sum of $1500.00 based on 5% of $30,000.00 * * *."

Therefore, while affirming the judgment, we remand the case to the court below, so that it in turn may remand these pro-

---

**3.** There is some conflict in the record as to whether the counsel for the appellants in his opening statement to the jury mentioned not only the $30,000 payable for permanent total disability, but also referred to the $12,500 maximum under "Other Cases."

248

ceedings to the Workmen's Compensation Commission with directions consonant with this opinion, to permit the appellants to receive the $1,500 credit against the $30,000 award.

*Judgment affirmed and case remanded for further proceedings consistent with this opinion. Appellants to pay the costs.*