## BETHLEHEM STEEL COMPANY *v.* CARTER
[No. 68, September Term, 1960.]

(Two Appeals In One Record)

*Decided December 16, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT and HORNEY, JJ.

*Jesse Slingluff, Jr.,* and *Decatur H. Miller,* with whom were *Piper & Marbury* and *Kenneth C. Proctor,* on the brief, for appellant, Bethlehem Steel Company.

*Ronald H. Goodman,* with whom were *Alvin E. Friedman* and *Friedman & Goodman* on the brief, for appellee, Carter.

HORNEY, J., delivered the opinion of the Court.

These are cross-appeals by the Bethlehem Steel Company (employer and self-insurer) and Robert Carter (claimant) from a judgment of the Circuit Court for Baltimore County affirming an award of the Workmen's Compensation Commission (Commission) by which the claimant was awarded compensation benefits of $1,000.

The claimant, as of the date of the hearing of the Medical Board for Occupational Diseases (medical board), was forty-eight years old and had worked for the employer for seventeen years and was still employed by it. From 1941 until 1954 the claimant worked in the "hot gang" where he was exposed to silica dust. His duties consisted of taking silica bricks out of boxcars behind the furnaces and carrying the bricks in a wheelbarrow to a furnace. In 1954, when it was learned that the claimant had silicosis, he was removed from the "hot gang" and assigned to another job in the "soaking pit" out in the open. That the claimant actually had silicosis was not disputed by the employer and it is conceded that the disease was contracted by the claimant while in the employ of the steel company. Despite the fact that the claimant suffered some shortness of breath, he was not precluded from performing his duties in the soaking pit in a satisfactory manner.

Although the claimant admitted that he was aware of his silicotic condition in 1954, he did not file a claim for compensation until 1957. His claim was for partial disability from about June of 1955.

At the hearing before the medical board, Dr. Moses S. Shiling, who testified on behalf of the claimant, stated that while he was still able to perform his present duties, the claimant should never again be exposed to silica dust or engage in any other dusty occupation. Dr. Herman J. Halperin, the employer's expert witness, testified that "from a medical preventive point of view, * * * [he did] not recommend that * * * [the claimant] continue in a silicon environment." Upon this testimony, and that of the claimant who stated he was afraid to return to his former job, the medical board made its finding and decided that while the claimant was not physically disabled, his capacity for work, due to demonstrable evidence of silicosis, had been impaired to an extent not amounting to total permanent disability, and was therefore entitled to compensation of $1,000 under the provisions of Code (1957), Art. 101, § 24(b).[1] The Commission affirmed the decision

---

1. Actually, the code section references in this opinion should be to those in the Code of 1951, but since there has been no change

of the medical board and ordered the employer to pay the claimant the fixed statutory compensation in a lump sum. The lower court on the appeal to it affirmed the decision of the Commission.

Both parties, being aggrieved by the affirmance of the decision of the Commission on this relatively simple factual situation, have posed by these appeals, two primary questions of law. The employer contends (i) that any claim the claimant may have had is barred by limitations;[2] and (ii) that even assuming the claim is not barred, there was no legally sufficient evidence tending to show that the claimant's capacity for work had been impaired within the meaning of § 24(b). On the other hand, the claimant, in addition to asserting that the employer waived the failure of the claimant to file a claim within the time limited by the statute, contends that he is permanently disabled because he cannot, or should not, perform the work he had performed in the last occupation in which he was exposed to the hazards of silicosis.

(i)

In support of its contention that the claim for compensation had been barred, the employer points to § 26(a), which provides in effect that if a claim for disability from an occupational disease be not filed within one year from the date of disablement, the right to compensation for the disability shall be forever barred. The claim is that since the claimant admittedly was aware of his silicotic condition for three years before claiming disability, he has forfeited his right to compensation. As an abstract statement of the law, this argument is undoubtedly correct, but the statute also provides that under some circumstances failure to file seasonably a claim may be

in the wording of the applicable sections involved, except in the official designation of the Commission (it was formerly the State Industrial Accident Commission), the references herein will be to the current sections of the Code of 1957.

2. Strictly speaking the question here is not one of limitations, but is one involving a statutory bar, which by the terms of the statute creating the bar further provides that the bar shall be deemed to have been waived in some circumstances.

deemed to have been waived. Specifically, § 26(a) stipulates that "failure to file a claim within the time limited herein shall be deemed waived unless objection to such failure be made at a hearing on such claim before any award or decision thereon."

In the case at bar the record is clear that the employer made no effort to controvert the date of disablement before the medical board as it might have done under the provisions of § 28 if it intended to raise an issue as to the statutory bar. The record further shows that the question of a bar was first raised by the employer in its memorandum of law filed with the medical board *after* the hearing though before the board had actually made its decision. The record is also clear that the question was raised before the Commission, but the Commission either ignored the issue or declined to pass on it since it had not been raised before the medical board. However, the lower court, in affirming the award of compensation to the claimant, rejected the contention that the claim for disability had been effectively barred and stated two reasons for so ruling. First, because the issue had not been properly raised before the medical board; and, secondly, because the statement of the employer at the medical board hearing—to the effect that the only issue raised by it was the extent of liability—in and of itself constituted a waiver of the bar.

The decision of the lower court on this question was correct. While it is true, as the employer contends, that an issue as to whether the statutory bar has become effective cannot be decided by the medical board because that function is reserved to the Commission, nevertheless, the provisions of § 29 specifically stipulates that on a petition for a review of the findings of the medical board, the Commission shall review the record of the "proceedings, findings and report" of the board and render a "decision and award" on the issues submitted to the board. As we read it, this section (§ 29) requires—if indeed it does not restrict—the Commission to a review of only those issues which were raised before the board, and the provisions of § 28 make it clear that the medical board, not the Commission, has the power and authority initially to ascertain and fix the date when the claimed disability began by

one of two methods, if and when the date of disablement is controverted but not otherwise. The wording of the statute is that if the date of the controverted disablement "cannot be exactly fixed scientifically, the medical board shall fix the most probable date, having regard to all the circumstances of the case." Thus it is apparent that the date of disablement, which has a direct bearing on the statutory bar, must be determined by the medical board.

With respect to the power of the board to determine an issue involving the bar of the statute, § 27 expressly provides that any one member of the board has "authority to hear *any issues*" [emphasis supplied] referred to the board and that the "determination thereof by any two members" shall be deemed to be a determination by the board. It is apparent, we think, that the terms of the statute are broad enough to include such other *related* issues that may be referred to the board for determination in addition to the separate "medical issues" to be determined at hearings conducted for that purpose. Indeed in practice the medical board not only makes findings of fact as to the medical issues, including any medical facts pertinent to the statutory bar (see *Big Savage Refractories Corp. v. Geary*, 209 Md. 362, 121 A. 2d 212 [1956]), but also has decided questions concerning the statutory bar. See *Consolidation Coal Co. v. Dugan*, 198 Md. 331, 83 A. 2d 863 (1951) and *Consolidation Coal Co. v. Porter*, 192 Md. 494, 64 A. 2d 715 (1949).

Moreover, it appears that § 26(a), which stipulates that failure to file a claim within the statutory period of one year shall be deemed to have been waived unless objection to the claim is interposed at a hearing before an award or decision thereon is made, necessarily means or implies that the objection to be effective must be made at or before the hearing at which it is proper to consider the issue of the statutory bar regardless of whether a decision thereon is made at such hearing or subsequently. Orderly procedure would seem to require notice of an intention to resist a stale claim at or before *any* hearing on the issue of its bar. In this respect the claiming of the statutory bar is somewhat analogous to a plea of limitations in that it must be filed promptly (and within

the specified time requirements) if a waiver is to be avoided. Furthermore, as the lower court pointed out, it appears that the employer effectively (though perhaps inadvertently) waived the statutory bar in this case when it declared at the medical board hearing that the "extent of liability" was the only issue to be decided.

Even if there was no express waiver, it is clear, since the statutory bar was not raised until *after* the medical board hearing, that the objection of the employer came too late to preclude the presumption of waiver.

(ii)

As to the question of the extent of disability, the claimant contends that he is permanently totally disabled because he can no longer work as a member of the "hot gang." Apparently, this contention is founded on a misunderstanding of the basic distinction between the meaning of the term "disablement" in accidental injury cases and occupational disease cases. The term, with respect to accidental injuries, is not defined by the statute, though "total disability" in accident cases, under the decisions of this Court, is incapacity to do further work of any kind. But § 67(15) defines "disablement," as used in §§ 22, 27, 28 and 29 (all of which concern disability in occupational disease cases) to mean:

> "[T]he event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease; and 'disability' means the state of being so incapacitated."

In making the contention that he is permanently disabled, the claimant evidently ignored the specific finding of the medical board that while he had demonstrable evidence of silicosis, he was "not physically disabled from performing his usual ["hot gang"] type of work; that he was not removed from his [former] occupation because he was disabled, but was removed only as a preventive measure; [and] that he could continue in the same [*i.e.,* former] occupation without further

external influence on his disease provided certain precautionary measures be taken such as the use of a mask and proper dust control."

It is true, of course, that § 24(b) declares that "[c]ompensation shall not be payable for partial disability due to silicosis," but the section further provides that, in lieu of compensation for partial disability, the claimant shall be entitled to $1000 in a lump sum or periodic installments if it is shown that the claimant has "demonstrable evidence of silicosis," and that "his capacity for work has thereby been impaired to an extent not amounting to total permanent disability."

Thus, it is apparent that the claim for total permanent disability must fail for two reasons. In the first place, it is obvious that § 24(b), which was repealed and re-enacted by Chapter 290 of the Acts of 1951, applies to this case since it deals specifically with silicosis and other pulmonary dust diseases, and to that extent this § 24(b) has the effect of qualifying the application of § 67(15), but even if § 67(15) does apply, the finding of the medical board definitely precluded the claimant from receiving payments for total permanent disability.

Furthermore, as we intimated in the *Big Savage* case, *supra,* we think it was more than a coincidence that following our decision in *Gower v. Davis Coal & Coke Co.,* 197 Md. 52, 78 A. 2d 195 (1951), wherein we had occasion to remark (at p. 58) that: "An employee may be entirely unable to go to work in the occupation in which he acquired silicosis, and therefore may be totally disabled under the statute, while he can earn as much, or perhaps more, in some other occupation," the Legislature forthwith repealed and re-enacted the provisions of § 24(b). Moreover, it is apparent that in re-enacting § 24(b) the Legislature must have contemplated that an employee affected with silicosis, or any other pulmonary dust disease, even though his capacity for work might be only slightly impaired, was nevertheless entitled to the fixed statutory compensation of $1,000 for his injury. That this is so is fortified by the further provisions that payment of the stipulated sum would "operate as a full release by the employee for

compensation and for any claim against the employer" that the employee might have for his less than "totally permanent" silicotic condition "irrespective of whether the employee thereafter continues in the same employment."

Now with respect to whether or not the claimant was entitled to the fixed statutory sum awarded to him by the Commission, we hold that the award was proper. There was no dispute that the claimant had demonstrable evidence of silicosis. And, although the evidence that his capacity for work had thereby been impaired was slight, it was enough since this case necessarily involved the inability of the claimant to perform the demands of the occupation in which he contracted silicosis rather than his capacity to perform the duties of his present occupation. There was evidence that the claimant had become short-winded as a result of his silicotic condition. There was evidence that his transfer to a dust-free occupation was proper from a medical preventive viewpoint. There was expert medical evidence that the claimant should never again be exposed to silica dust. There was evidence that if he should resume working in any dusty occupation he would be subjected to the discomfort of wearing a mask while he was so engaged. Finally, there was evidence that he was afraid to return to his former employment as a member of the "hot gang." We think the evidence produced was legally sufficient to show that the capacity of the claimant had been impaired "to an extent not amounting to total permanent disability."

For the reasons stated the order of court affirming the award and decision of the Commission will be affirmed.

*Order affirmed; original appellant
to pay the costs.*