GENERAL ELECTRIC COMPANY, ᴇᴛ ᴀʟ. *v.*
CANNELLA

[No. 82, September Term, 1967.]

*Decided February 28, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, FINAN and SINGLEY, JJ.

*Raymond A. Richards* and *Robert J. Thieblot,* with whom were *Rollins, Smalkin, Weston & Andrew* and *Allen, Thieblot & Hughes* on the brief, for appellants.

*Bernard M. Goldstein,* with whom was *Samuel S. Eisenberg* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellee Umberto Cannella (claimant below), 71 years of age, was employed for 37 years as a porcelain sprayer by Locke Insulator Company which subsequently became the Insulator Department of General Electric. He retired on June 1, 1961, at the age of 65, as a result of the company's mandatory retirement policy and not because of disability. He received normal retirement pay. In the more than 37 years of employment, he estimated that he had lost no more than a month total time because of illness. He testified that he had experienced pain in his chest and stomach some five or six years prior to retirement and that it got progressively worse, but he did not go to a doctor. In 1963, some two years after retirement, he consulted a physician; x-rays were taken which disclosed the pres-

ence of silicosis. On May 12, 1964, Cannella filed a claim for disability compensation with the Workmen's Compensation Commission. See Code (1964 Repl. Vol.), Art. 101, § 26.

At the hearing before the Medical Board for Occupational Diseases, claimant testified that he still had pains in his chest and stomach. Asked if there was anything else wrong with him, he said "No." He indicated that he still drove his own car, performed menial tasks around his home and visited his children. Claimant produced as a witness at the hearing, Dr. Elliott Michelson, who testified that he had chronic interstitial fibrosis and right heart enlargement due to pneumoconiosis, typical of silicosis, and that he was totally disabled. Claimant also submitted a report by Dr. John Constantini, which stated that he was suffering from "pneumonoconiasis" with irreversible lung damage.

The employer and insurer submitted reports of several physicians who had examined the claimant. Dr. C. Vernon Williamson stated that if the claimant had experienced increased shortness of breath in the past few years, it was most likely due to his inactivity and advancing years rather than on the basis of pneumoconiosis. Dr. Frank A. Faraino, a chest specialist, stated that the claimant's condition was compatible with that of pneumoconiosis of many years duration and that what little progression had taken place since retirement could be ascribed to increase in age. A report was also submitted from a chest specialist, Dr. D. Edward Leach, which stated that the claimant's aorta was somewhat increased in density, that he undoubtedly had arteriosclerosis and that his increased shortness of breath in recent years was compatible with his increased age.

For an understanding of the problems presented by the application of the statute in this case, as they confronted the Medical Board, the Commission, the lower court and now this Court it is necessary that we set forth Section 24 (b) of the Workmen's Compensation Law, Article 101, Code (1957) to the extent here applicable:

> "(b) *Compensation for silicosis, asbestosis or other pulmonary dust disease.*—Compensation shall not be payable for partial disability due to silicosis, asbestosis

or other pulmonary dust disease; provided, however, that if an employee has demonstrable evidence of silicosis, asbestosis or other pulmonary dust disease and his capacity for work has thereby been impaired to an extent not amounting to total permanent disability, compensation shall be payable in the amount of $1,000.-00, * * *. In the event of total disability or death from silicosis, asbestosis or other pulmonary dust disease, compensation shall be payable to employees and their dependents in the same manner and in the amounts as required to be paid by employers to employees and their dependents who are totally disabled or die from injury arising out of and in the course of their employment provided in § 36 of this article. * * *."

It will be noted that Section 24 (b) actually covers two different situations. The first part of the section covers cases wherein the claimant's condition gives evidence of demonstrable silicosis; the latter part of the section pertains to permanent total disability resulting from silicosis.

On May 4, 1965 the Medical Board made a finding that "considering the fact that this man [claimant] retired without any disability and it was later discovered that he had silicosis, the Medical Board feels that he is entitled to compensation in the amount of $1,000, as provided in Section 24 (b) of the Workmen's Compensation Law."

The Workmen's Compensation Commission, after reviewing the findings of the Medical Board and hearing argument of counsel, found on February 10, 1966 that the claimant was "permanently totally disabled, forty percent (40%) thereof being the result of the occupational disease and sixty percent (60%) being the result of *normal aging* and *other unrelated causes*." (Emphasis supplied). On this basis the employer was ordered to pay the claimant in accordance with Art. 101, § 23(d), at the rate of $48 per week, not to exceed the sum of $12,000, which is forty percent (40%) of $30,000, the maximum award for permanent total disability.

The employer and insurer appealed this award to the Superior

Court of Baltimore City, presenting the following issues for decision:

1. Was the Employee-appellee's claim barred by the statute of limitations?
2. Did the Commission have the authority to apportion the award made to the claimant, having found that the claimant was permanently totally disabled?
3. Is the claimant entitled to an award for total permanent disability due to silicosis contracted in the course of his employment?

The court below sustained the Commission's finding in favor of the claimant on the issue of limitations on the basis of our decisions in *Consolidation Coal Company v. Porter*, 192 Md. 494, 64 A. 2d 715 (1949) and *Consolidation Coal Company v. Dugan*, 198 Md. 331, 83 A. 2d 863 (1951). On appeal to this Court the appellants raised no objection to the finding of the lower court on this first issue, and this Court being in agreement with the lower court in its finding that the claim had been timely filed, we see no reason for a discussion of the question of limitations in this opinion.

With regard to the second issue, the lower court did not think that the Commission had authority to apportion the award and further, under the third issue, found that he was entitled to an award for permanent total disability due to silicosis contracted in the course of his employment.

The lower court, in finding that the opportioning of the award by the Commission under Section 23 (d)[1] was erroneous, stated:

"In regard to the authority of the Commission to apportion the award made to the Claimant, it appears to the Court that the Maryland Legislature has set out a statutory pattern to be followed in regard to (1) occupational diseases other than pulmonary dust diseases and (2), silicosis, asbestosis, or other pulmonary

---

1. Section 23 (d) does permit the apportionment of disability of occupational diseases generally, however Section 24 (b) applies specifically to silicosis and other pulmonary dust diseases and did not permit apportionment of the award at the time the claim in the instant case was filed.

dust diseases. It is clear from a survey of this pattern that the Commission has not applied the law to the facts of this case in a correct manner and *that the Commission had no authority to apportion the award* made to the Claimant, 40% of the total permanent disability being a result of occupational disease and 60% being the result of normal aging. Where the decision of the Commission is based upon an erroneous conception of the law, it is clearly reviewable. *Gower v. Davis Coal and Coke Co.,* 197 Md. 52 at 60 (1951)." (Emphasis supplied).

The Superior Court found, as did the Commission and the Medical Board, that the claimant was permanently totally disabled, however it did not think the evidence supported the existence of any disabilities due to "unrelated causes" and that "normal aging" should not be considered as a factor in the reduction of benefits under the act, stating:

"The Court feels that infirmities due to age which have not previously caused any disability should not be a basis to reduce any award to which an employee is entitled and that to deny compensation on the basis of old age is to deprive older workers of the full protection of the Workmen's Compensation Act. Here, it appears that the Claimant might have continued working had it not been for the mandatory retirement age and the fact that he began to feel sick. The sick feeling, the transcript of the Medical Board hearing reveals, was due to silicosis, * * *.

* * *

"Based on the above findings, this Court holds that the Claimant, Umberto Cannella, is permanently and totally incapacitated and, under the provisions of Sections 24 (b) and 36 (1) (a) of the Workmen's Compensation Act, is entitled to compensation for permanent total disability by an award not to exceed a total of $30,000.00, * * *."

The pertinent part of Section 24 (b) applied by the lower court reads as follows:

"In the event of total disability or death from silicosis, asbestosis or other pulmonary dust disease, compensation shall be payable to employees and their dependents in the same manner and in the amounts as required to be paid by employers to employees and their dependents who are totally disabled or die from injury arising out of and in the course of their employment as provided in § 36 of this article."

The award for permanent total disability under Section 36 is $30,000.

Although we disagree with the lower court's ultimate finding, which we shall discuss later in this opinion, we agree with its conclusion that the award cannot be apportioned.

The Commission made its apportionment of the award under Subsection (d) of Section 23 of Article 101 which, although applicable to occupational diseases in general, is not applicable to pulmonary diseases under the occupational disease classification. Pulmonary diseases have long been the subject of special treatment under the Workmen's Compensation Act, the pertinent statute being Section 24 (b) of Article 101, previously set forth in this opinion, and the award in this case had to be within the framework of Section 24 (b).

Any doubt as to whether there could be an apportionment of an award in silicosis cases has been dispelled by the action of the Legislature in enacting Chapter 151 of the Acts of the General Assembly 1967, effective date of the act being June 1, 1967, which provided for apportionment of the award in pulmonary occupational disease cases in the following terms:

"b *Compensation for silicosis, asbestosis or other pulmonary dust disease.—*
Compensation shall be payable for silicosis or other pulmonary dust disease in the same manner as provided in § 36 (4) of this article for other cases of disability."

Section 36 (4) provides that when a disability (under other cases) is partial in character, but permanent in quality, the Commission shall determine:

"* * * the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury and in determining such portion or percentage of impairment resulting in an industrial loss the Commission shall take into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of the injury, and shall award compensation in such proportion as the determined loss bears to the sum of $12,500, * * *."

We think the repeal and reenactment of Section 24 (b) by the Legislature is a recognition on its part that a fair and realistic gradient for awarding compensation in cases of permanent partial disability due to pulmonary dust diseases, silicosis and asbestosis did not hitherto exist and that many hard cases had resulted because of this failure to allow apportionment.

It might be well to review briefly the legislative history of Section 24 (b). In *Big Savage Refractories Corp. v. Geary*, 209 Md. 362, 121 A. 2d 212 (1956), Judge Collins had occasion to comment on the development of the statute:

"In *Gower v. Davis Coal & Coke Co.*, 197 Md. 52, 78 A. 2d 195, decided January 10, 1951, this Court held that an employee entirely unable to work in the occupation in which he acquired silicosis was entitled to total disability even though he could earn as much or perhaps more in some other occupation. Apparently as a result of the decision in the *Gower* case, *supra,* the Legislature enacted Chapter 290, Section 24, of the Acts of 1951, Code, 1951, Article 101, Section 23(b), which provided: '* * * that if an employee has demonstrable evidence of silicosis, asbestosis or other pulmonary dust disease and his capacity for work has thereby been impaired to an extent not amounting to total permanent disability, compensation shall be payable in the amount of $1,000.00, * * *.' " *Id.* at 368; 121 A. 2d at 215.

The obvious purpose of the 1951 amendment was to circumvent the *Gower* case and to provide compensation to the em-

ployee when he was unable to continue his present work because of the danger of aggravating the silicotic condition, but was not totally permanently disabled and could obtain employment in some other type of occupation or industry. In fact, this precise interpretation of the statute was applied in *Bethlehem Steel Company v. Carter,* 224 Md. 19, 165 A. 2d 902 (1960), which affirmed an award under Section 24 (b), where the employee was removed from the work he was performing at the time of the injury to another job as a preventive measure. In that case, the Court said:

> "Moreover, it is apparent that in re-enacting § 24(b) the Legislature must have contemplated that an employee affected with silicosis, or any other pulmonary dust disease, even though his capacity for work might be only slightly impaired, was nevertheless entitled to the fixed statutory compensation of $1,000 for his injury." *Id.* at 26.

However, the Legislature, in its effort to remedy one hardship by reenacting Section 24 (b) in 1951, established the foundation for what may be considered even greater hardship on an employee who, although sustaining a permanent partial disability due to silicosis, could never expect to receive more than $1,000 as long as the disability was short of a permanent total disability. The recognition of this hardship, as we have stated, prompted the enactment of Chapter 151 of the Acts of the General Assembly 1967, whereby a realistic apportionment can now be made commensurate with the percentage of disability attributable to silicosis. However, this change in the law came too late for application in the instant case since the claim was heard by the Commission in January of 1966, more than a year prior to the effective date of Chapter 151 of the Acts of 1967. See *Big Savage Refractories Corp. v. Geary,* 209 Md. 362, 372, 121 A. 2d 212 (1956).

The lower court in granting an award for permanent total disability under Section 24 (b), rationalized its decision on the basis that the Commission made a finding of permanent total disability; that the Commission had no authority to apportion the award; that the Commission made the further finding that

forty percent (40%) of the disability was due to silicosis and sixty percent (60%) due to "normal aging" and "other unrelated causes"; that "normal aging," *per se,* was not a factor which should diminish the award and there was not sufficient evidence in the record to substantiate the finding of "other unrelated causes" affecting the disability. On this premise the court attributed the permanent total disability solely to silicosis and accordingly granted the maximum award.

We agree with the appellee's contention that age, *per se,* as distinguished from the infirmities of old age, should not be considered as a factor for diminution of the award. The finding of the Commission leaves much to be desired insofar as elightening us as to what it meant by "normal aging."

In *Arundel Corp. v. Plater,* 236 Md. 322, 326, 203 A. 2d 895, 897 (1964), Judge Oppenheimer speaking for the Court stated:

> "Infirmity may be the result of old age. See *McClure v. World Ins. Co.,* 126 Neb. 676, 680, 254 N. W. 393 (1934) ; *Armour & Co. v. Tomlin,* 42 S. W. 2d 634, 636 (Tex. 1931) ; *The Oxford Universal Dictionary; Webster's New World Dictionary of the American Language.* In the 'other cases' section of the Act, the age of the injured employee is listed with the nature of the injury and the employee's occupation, experience and training as one of the factors to be considered by the Commission in determining the portion or percentage of impairment of the employee's industrial loss of use of his body as a result of the injury. § 36(4), Article 101. Nowhere in the Act, however, is there any specific provision that age, of itself, is to be determinant of the compensation to which an employee is entitled. Whether the injured employee is old or young, if he is entitled to compensation, the compensation for a specified injury is the same, subject, as in this case, to any apportionment due to pre-existing disease or infirmity."

Medical testimony reveals that the claimant's increased shortness of breath, according to Dr. Williamson, could be assigned

to his inactivity and advancing years. Dr. Faraino submitted a statement to the effect that what little progression had occurred in his occupational disease since retirement could be assigned to increase in age. Dr. Leach's report stated that the claimant's increased shortness of breath was compatible with his increased age. The evidence is not clear cut as to whether these debilities were the result of "normal aging" or an infirmity brought on by the aging process. Nor does the record reveal that anyone sought to bring out such a distinction.

Prescinding, however, from the consideration of "normal aging," we have the additional non-compensable factor of disability due to "other unrelated causes." Again, the medical testimony taken before the Commission is not as clear or satisfactory as it might be, in identifying the "other unrelated causes." There is, however, in our opinion, evidence in the record from which a reasonable inference could be drawn that the claimant had other physical impairments, which contributed to his premanent total disability, which were not due to "normal aging" and not related to his silicotic condition. Dr. Leach referred to the fact that the claimant's "aorta was somewhat increased in density," that "he, undoubtedly, had arteriosclerosis * * *." We think the record contained evidence which was legally sufficient to support the Commission's finding.

The findings of facts by the Commission in occupational disease cases are final and when supported by legally sufficient evidence to sustain them they are not subject to appellate review. *Martin-Marietta v. Leius,* 237 Md. 217, 205 A. 2d 792 (1965); *Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A. 2d 523 (1957); *Johnstown Coal & Coke Co. v. Dishong,* 198 Md. 467, 84 A. 2d 847 (1952); *Gower v. Davis Coal & Coke Co.,* 197 Md. 52, 78 A. 2d 195 (1951).

In this case we are troubled with the same frustration experienced by this Court in *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 258, 137 A. 2d 680 (1958); when faced with a somewhat similar situation we stated:

"The Commission did not trouble to state the reason or reasons for its conclusion. Judge Harris, in the Circuit Court, described the record as 'contradictory, con-

fusing, incomplete and, of course, unsatisfactory.' We share his views. *The law makes no provision for remanding the case to the Commission for the purpose of making a more understandable record.* It is not our province to weigh the evidence, and the statute (so far as it can do so) requires the courts to accept the findings of fact of the Commission. There is, however, an implicit condition—that there must be some evidence or sufficient evidence to sustain the findings. *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop,* 189 Md. 147, 55 A. 2d 507; *Big Savage Refractories Corp. v. Geary, supra; Duncan v. McNitt Coal Co.,* 212 Md. 386, 129 A. 2d 523." (Emphasis supplied.)

See also *Monumental Printing Company v. Edell,* 163 Md. 551, 560, 164 A. 171, 174 (1933); *Allen v. Glenn L. Martin Co.,* 188 Md. 290, 294-295, 52 A. 2d 605, 607 (1947).

As we have stated elsewhere in this opinion, Section 24 (b) contains two separate provisions concerning the manner in which silicosis should be viewed for the purpose of an award. The first part of the section provides for a flat $1000 award where the disability from the disease is less than total permanent disability and the second part provides for a maximum award, "in the event of *total disability * * * from silicosis. * * *.*" (Emphasis supplied.)

In this case the Commission found that not only normal aging, but also "other unrelated causes" contributed to the permanent total disability. Even though mindful of the liberal construction accorded the statute by the courts, *Bayshore Industries Inc. v. Ziats,* 232 Md. 167, 192 A. 2d 487, 491 (1963); *Watson v. Grimm,* 200 Md. 461, 472, 90 A. 2d 180, 185 (1952), we cannot agree with the construction placed on the Commission's findings by the lower court, without ignoring the finality that should be accorded such findings where supported by legally sufficient evidence and without doing violence to the clear language of Section 24 (b) of the statute.

We again mention that the change made by the Legislature in Section 24 (b) by Chapter 151 of the Acts of 1967, cannot benefit the claimant in this case, by allowing an apportionment

of the award. Such a result would be desirable; however we are mindful of the admonition that "hard cases make bad law."

Accordingly, we find it necessary to reverse the lower court and remand the case for the entry of an award under that provision of Section 24 (b) which provides for an award of $1,000 where the employee has "demonstrable evidence of silicosis * * * and his capacity for work has thereby been impaired to an extent not amounting to total permanent disability * * *."

> *Order reversed and case remanded for further proceedings consistent with this opinion, costs to be paid one-half by appellants and one-half by appellee.*