## BABCOCK & WILCOX, INC., INC., ET AL. *v.* STEINER

[No. 378, September Term, 1969.]

*Decided June 8, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SMITH and DIGGES, JJ.

*John F. Ward,* with whom were *Henry E. Weil* and *Shapiro & Weil* on the brief, for appellants.

*Martin E. Gerel,* with whom were *Ashcraft & Gerel* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

In this appeal we are asked to determine whether the lower court erred in affirming an order of the Workmen's Compensation Commission (Commission), whereby the claimant (appellee) was found to be totally permanently disabled from the occupational disease of asbestosis and was awarded a sum not to exceed $30,000, as provided by the Workmen's Compensation Act (Act), Maryland Code (1964 Repl. Vol.) Art. 101, §§ 24 and 36. It is the contention of the employer and insurer (appellants) that the claimant had only a partial disability and pursuant to § 24(b) of the Act, should have received a lump sum final payment of $1000.

Since the findings of facts by the Commission in occupational disease cases are final and when supported by legally sufficient evidence are not subject to appellate review, we will recite the facts upon which the Commission predicated its decision.[1]

---

1. General Electric v. Cannella, 249 Md. 122, 132, 238 A. 2d 891 (1968); Martin Marietta v. Leius, 237 Md. 217, 220, 205 A. 2d

The claimant was 64 years of age at the time of the hearing before the Commission on March 28, 1967. He had been employed as an asbestos worker for approximately 36 years. He learned of his respiratory condition in late July or early August of 1964 while working for Babcock & Wilcox, Inc. (the employer and one of the appellants) at Chalk Point, Maryland. During the 10 year period from 1955-1965 he was exposed to asbestos dust about 98% of his working time and for the ten year period of July 1954 to July 1964, he was employed for at least two years in Maryland. He worked for Babcock & Wilcox, Inc., (the employer in this appeal) from January 3, 1964, until August 24, 1964, except for a three week period when he was treated for an ulcer. He was exposed to asbestos dust during the course of this employment. When he left the employer he notified the foreman on the job that he was leaving on account of his health. His physician had advised him to abandon his trade; however, he decided to return for another try and worked for General Insulation Company from September 24, 1964 to October 28, 1964 (five weeks) during which time he was also exposed to asbestos dust. However, General Insulation transferred him to another job on which he worked from October 28, 1964 to December 29, 1964, and from the evidence it may be deduced that he was not exposed to asbestos dust after this transfer. He was thereafter employed in Maryland by Parker-Fallis from January 4, 1965 to March 15, 1965 and from August, 1965 to June of 1966. In this employment he was not exposed to asbestos dust. He worked again in November of 1966 for 4½ days for Parker-Fallis. On November 29, 1966, he went to work for Porter-Hayden Company in Baltimore and worked there until March 22, 1967. On this job he was not exposed to asbestos dust. He was not working, a week later, at the time of the hearing before the Medical Board on March 28, 1967. At the hear-

792 (1965); Mutual Chemical Co. v. Thurston, 222 Md. 86, 94-95, 158 A. 2d 899 (1960); Duncan v. McNitt Coal Co., 212 Md. 386, 395, 129 A. 2d 523 (1957).

ing before the Medical Board it was stipulated by the attorneys representing all parties that the claimant had asbestosis and was permanently and totally disabled from working at his occupation or in any industry involving danger from dust inhalation.

At the hearing before the Medical Board, as well as at the hearing before the Commission, the main issue was the question of who was the responsible employer under the Act. Both the Medical Board and the Commission found that Babcock & Wilcox, Inc., was the responsible employer. This same issue as to the responsible employer was raised before the circuit court. The appellants also raised questions bearing on the giving of notice by the claimant and the evidence of any causal connection between his exposure to asbestos dust while in the employ of Babcock & Wilcox and the pulmonary dust disease he contracted. The issue was also raised concerning total permanent disability having been incurred while in the employ of Babcock & Wilcox. The circuit court confirmed the Commission's findings in favor of the claimant on all of the issues and disposed of the issue concerning total permanent disability on the basis that the physicians testifying for the claimant, as well as the insurance carrier, found that the claimant had sustained a total permanent disability from asbestosis.

The record further reveals that although the attorneys for the parties qualified the total permanent disability of the claimant to work in his occupation, the medical testimony which we will later recite, and which was uncontroverted, goes much further.

The testimony of Dr. Irving Selikoff of the Mount Sinai School of Medicine, New York City, who was called as the claimants' witness and whose testimony was uncontradicted stated:

"A. * * * I think this man is disabled totally
for this employment without any questions
* * *

* * *

Q. (Dr. Frenkil) Dr. Selikoff, do you think this man could do something else?

A. I think he could be a watchman, anything that would not involve any difficulty with pulmonary function, and secondly to avoid respiratory infection. * * * He should not be employed in any business that would involve exposure to elements or require him to have any significant pulmonary reserve. If he could get a job as cashier in a restaurant I think he could sit there, take change."

While it is true that the finding of facts by the Commission in occupational disease cases are final, yet, they must have legally sufficient evidence to support them. See cases cited in *General Electric v. Cannella*, 249 Md. 122, at 132 and cases cited in footnote 1 of this opinion. In the instant case the appellants would claim that the facts showing that the claimant worked in his own and other occupations, without loss in earning capacity, after the date of total permanent disability is incontrovertible proof that the finding of the Commission on the issue of the extent of the disability was without evidence to support it. If the medical testimony as to the total permanent disability of the claimant had been controverted, then there might be validity to the appellants' contention. However, this testimony was not contradicted.

We do not believe that the appellants can now successfully argue that because the claimant continued working at other jobs he sustained only a partial disability. We think the stipulation as to total permanent disability from working in his occupation, coupled with the broader disability established by the medical testimony, takes the case out of the line of decisions represented by *Cannella, supra,* and *Bethlehem Steel Co. v. Carter,* 224 Md. 19, 165 A. 2d 902 (1960).[2]

2. These cases are cited by the appellants as authority for their contention, along with Belschner v. Anchor Post, 227 Md. 89, 175 A. 2d 419 (1961); but Belschiner, although being an occupational disease case, is not a pulmonary dust disease case coming under § 24(b).

*Cannella* is readily distinguishable in that the Commission in that case made a finding of fact that the claimant was only 40% disabled from silicosis (and 60% from normal aging); therefore, without more, it was inevitable that the $1000 award provision of § 24(b) should apply. In *Carter,* the Commission found that the claimant could continue to work in his own occupation so long as "certain precautionary measures" were taken. This was done and he continued to work in his occupation.

In the case before us there is no doubt in our mind that the medical testimony shows that for all practical purposes the claimant is unemployable in any industry. He has spent 36 years of his life in the building trades industry, and specifically as an asbestos worker. The testifying physician, who had eminent qualifications, stated that he could be a "watchman" or "if he could get a job as cashier in a restaurant I think he could sit there, take change." Elsewhere in his testimony Dr. Selikoff testified:

> "Q. Didn't you tell Mr. Gerel [counsel] that he would be foolish to go to work next week?
> A. Yes, he is disabled, couldn't breathe.
> Q. He is breathing today. Let's assume he went to work next week able to do a day's work?
> A. I don't think he should, I don't think he could do it without any difficulty."

Professor Larson has an excellent discussion of the meaning of "total disability" in 2 Workmen's Compensation Law, § 57.51:

> " 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and charac-

ter of work a man can be able to do without forfeiting his totally disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' " (*Lee v. Minneapolis St. Ry.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950).

See also *Kline, Inc. v. Grosh*, 245 Md. 236, 246, 226 A. 2d 147 (1965), and *Petrone v. Moffat Coal Co.*, 427 Pa. 5, 233 A. 2d 891, 893-984 (1967).

We are confronted here with a record which shows that the date of the occurrence of the disease was on or about August 24, 1964, and that the claimant worked a total of 80 weeks during the ensuing 138 weeks prior to his ceasing work on March 22, 1967. We think this might well be fatal to the claimant's case were we not dealing with the peculiar type of disease with which he is afflicted, namely, asbestosis. First of all, the determination that the occurrence of the disease took place on or about August 24, 1964, and that he was totally disabled as of that date, was not established until the date of the medical hearing on March 28, 1967.

It must be borne in mind that asbestosis, like other pulmonary dust diseases, is insidious in its onset. It can be well advanced before a claimant is aware that it has taken up dread habitation in his chest. The victim may, from a clinical standpoint, be totally and permanently disabled but through sheer drive of will power and habit continue for some time at his job. We think this is what has occurred in this case. At one point in his testimony Dr. Selikoff stated: "I am sure he can do a day's work next week but he would be crazy to do it." The claimant himself described his last days of work in this context:

"Q. Do you intend to keep working?

A. I don't. I can't go back. I just can't make it any more. Just can't make it, just can't do it.

Q. How were you able to work up until last week?

A. I forced myself. * * *

Q. Mr. Steiner, what is the situation as far as coughing is concerned?

A. I cough continuously."

* * *

"Q. (counsel) The pain you indicated earlier you had in your chest, what is the condition of that * * * state of that pain at the present time?

A. It comes and goes, hits for a few seconds, little sharp pains, but right now I have kind of a slight general pain all the way through, feels like it is all the way around, like I have got a belt on around me right under my arm pits, like a belt six inches wide clamped up around me which took my breath, gives it a dull aching feeling."

We think that the situation presented by this case is analogous to that of *Peabody Coal Company v. Taulbee,* 294 S.W.2d 925 (Ky. 1956). In *Taulbee,* the claimant was a coal miner, 55 years of age, who had contracted silicosis after working in the coal mines for 30 years. In the instant case Steiner was 64 years of age when he contracted asbestosis and had been working 36 years in the industry. In *Taulbee,* the claimant also continued to work for the same employer, in the same occupation, after medical examinations determined that he was totally permanently disabled. The Court of Appeals of Kentucky in affirming the finding of the Workmen's Compensation Commission stated:

"In the case at bar, the Board evidently considered the medical evidence sufficiently con-

vincing to justify its conclusion that the claimant should not be working at hard labor at all and that there was no reasonably stable market for his services despite the fact that he continued to work rather steadily for the appellant. We believe that such a decision comes clearly within the powers of the Board to make that it is an aspect of the Board's fact-finding power, and that this Court should not say as a matter of law that a man who is actually working cannot be totally disabled within the meaning of the Workmen's Compensation Law when a competent medical specialist says the man is totally disabled from a medical standpoint and definitely should not be working. The claimant's efforts to supply his financial needs in this absence of the prompt payment of compensation benefits should not be permitted to transmute the finding of fact of the Board into a question of law for this Court." 294 S.W.2d at 926.

In the instant case the Commission in its findings stated: "It has been stipulated by the claimant's attorney and the attorneys for the insurer and employer that the claimant does have asbestosis and is permanently and totally disabled." There is no qualification on this finding. It is true that the stipulation did restrict the total permanent disability to that of disability from performing work in the claimant's occupation; however, the Commission also had before it the medical testimony of Dr. Selikoff, which, as we have already stated, extended the disability to all work, except that of a sedentary nature. On the record before us, in this case, we are not called upon to decide what might have been the result, in light of § 24(b), had the employee been totally permanently disabled from working in his last occupation alone, but had been able to work in other occupations nor do we here decide that issue.[3]

---

3. Cf. Gower v. Davis Coal and Coke Co., 197 Md. 52, 78 A. 2d

Viewing the record as a whole, we think there was evidence to support the finding of the Commission and that it would be most inappropriate for this Court to modify it. See *Mutual Chemical Co. v. Thurston*, 222 Md. 86, 94-95, 158 A. 2d 899 (1960), and Article 101, § 29. We affirm the order of the lower court sustaining the award of the Commission.

*Order affirmed, appellants to*
*pay costs.*

195 (1950), decided prior to the repeal and re-enactment of § 24(b) in 1951. For legislative history of § 24(b), see Big Savage Refractories v. Geary, 209 Md. 362, 121 A. 2d 212 (1956) and Bethlehem Steel Co. v. Carter, 224 Md. 19, 26, 165 A. 2d 902 (1960). It should also be noted that by Chapter 141 of the Acts of 1967, § 24(b) has again been repealed and re-enacted whereby a realistic apportionment may now be made based on the percentage of disability attributable to silicosis, asbestosis or pulmonary dust disease. However, this amendment was passed too late for application to the case at bar. In other words under 24(b) as presently enacted, the Draconian decision need no longer be made whereby the claimant either receives the full award of $30,000, if he be totally permanently disabled, or only $1000, if he be partially disabled.