579 A.2d 1219

William C. POTTER

v.

**SOUTHERN MARYLAND ELECTRIC
COOPERATIVE, INC., et al.**

No. 1944, Sept. Term, 1989.

Court of Special Appeals of Maryland.

Oct. 2, 1990.

Leonard J. Ralston, Jr. (Ashcraft & Gerel on the brief), Rockville, for appellant.

Glenn C. Parker (Phillip T. Levin and Smith, Somerville & Case on the brief), Baltimore, for appellees.

Argued Before WILNER, ROSALYN B. BELL and CATHELL, JJ.

WILNER, Judge.

■ The issue in this case is not susceptible of facile articulation. It is whether a person who was found by the Workers' Compensation Commission to be permanently totally disabled, in part by reason of a compensable accident and in part by reason of a non-compensable worsening of a prior condition, and who thus received only part of the compensation that would have been payable if the whole of his permanent total disability had resulted from the compensable accident, may reopen his case under Md.Ann.Code art. 101, § 40(b) or (c) and receive additional compensation upon a showing that the disability attributed to the compensable accident has increased. We think that the answer is "yes," and we shall therefore reverse the summary judg-

ment entered in favor of appellee by the Circuit Court for Charles County.

On September 11, 1976, appellant injured his left foot in the course of his employment with appellee. On August 19, 1981, the Commission found that appellant was permanently totally disabled. That disability, it found, was attributable to three causes: 25% was due to the accident; 40% was due to skin cancer which he had prior to his employment with appellee; and 35% was due to a worsening of the skin cancer after the accident. The 25% disability attributed to the accident was based on a finding that appellant had sustained a 50% loss of his left foot and that a total loss of the left foot would have created a 50% permanent partial disability under art. 101, § 36(4), commonly referred to as "other cases," i.e., not involving a statutorily set disability based on the loss of a particular part of the body. Appellee was ordered to pay compensation based on the 25% disability resulting from the accident; the Subsequent Injury Fund was ordered to pay based on the 40% disability attributed to the preexisting skin cancer. No compensation was paid for the 35% attributed to a worsening of the skin cancer following the accident because the Commission found that to be non-compensable. *See Subsequent Injury Fund v. Thomas*, 275 Md. 628, 342 A.2d 671 (1975).

In January, 1987, appellant filed a petition to reopen the case, alleging that, at some point after the Commission's award, the condition of his left foot had worsened to the point that the foot had to be amputated. He therefore claimed that the permanent disability resulting from the accident had increased from 25% to 50% and that he should be compensated accordingly. The petition made no reference to § 40 or any other statute, although in a subsequent memorandum filed with the Commission, appellant relied on § 40(c); appellee's response to the petition referred to § 40 generally. In a brief order entered April 4, 1989, the Commission denied the petition, stating that "there can be no finding of worsening of condition in this case." Although that statement could mean a number of things, the

things, the undisputed fact that appellant's left foot was amputated and the manner in which the case was presented to the Commission indicate the Commission was ruling as a matter of law that, because appellant had previously been found permanently totally disabled, there could be no further increase in disability and thus no entitlement to additional compensation. On appeal, the Circuit Court for Charles County, by granting appellee's motion for summary judgment, affirmed for precisely that reason.

Appellee states the proposition succinctly in its brief: "The Commission's finding of permanent total disability as of August 10, 1981 amounted to a determination by the Commission that the Appellant had sustained a total loss of industrial capacity. Since the Appellant had no industrial capacity left to lose, the Commission was correct in refusing to reopen the Appellant's claim for additional benefits...."

Appellant seems willing to accept that proposition in a case where the claimant has been fully compensated for the permanent total disability. But where, as here, he has *not* been so compensated because only part of the initially-found permanent total disability resulted from a compensable accident, there *was* some compensable industrial capacity left to lose and if he loses it because of a worsening of accidental injury, he ought to be compensated for that additional disability. It is like, he says, being more than 100% disabled, which, though defying ordinary logic, is possible under Workers' Compensation law. *See, for example, Giant Food v. Coffey,* 52 Md.App. 572, 451 A.2d 151 (1982), *cert. denied,* 295 Md. 283 (1983). In effect, he contends that the initial finding of permanent total disability was a misnomer—that he may have been 100% disabled at the time by reason of the combination of medical problems but that he was not "permanently totally disabled" because he was not compensated for such a disability.

We begin our discussion by recalling that the intent of the General Assembly in enacting the Workers' Compensation Act was "to protect workers and their families from

hardships inflicted by work-related injuries," to "provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment...." *Queen v. Agger*, 287 Md. 342, 343, 412 A.2d 733 (1980). *See also Edgewood Nursing Home v. Maxwell*, 282 Md. 422, 426, 384 A.2d 748 (1978). The Act is to be construed "liberally to effectuate its benevolent purposes," *Keene v. Insley*, 26 Md.App. 1, 11, 337 A.2d 168 (1975) and cases cited therein, and, in accordance with that view, uncertainties in the law are to be "resolved in favor of the claimant." *Howard Co. Ass'n, Retard. Cit. v. Walls*, 288 Md. 526, 530, 418 A.2d 1210 (1980).

■ Although there is some earlier case law reflecting the view that "total disability" means the "incapacity to do work of any kind," *see, for example, Richard F. Kline, Inc. v. Grosh*, 245 Md. 236, 243–44, 226 A.2d 147 (1967), the current view is that the term is not to be taken so literally. In *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 473–74, 265 A.2d 871 (1970), the Court made clear, though in *dicta*, that it does not denote "utter and abject helplessness," or an inability to do work of any kind, or even an inability to carry on some gainful employment. Adopting the concept enunciated in a Minnesota case, the Court construed the term as meaning only an inability to perform services "other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist...." *Id.* at 474, 265 A.2d 871, quoting from *Lee v. Minneapolis St. Ry.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950). In *Dent v. Cahill*, 18 Md.App. 117, 127, 305 A.2d 233 (1973), we held that *dicta* to be "a correct statement of the Maryland law on permanent total disability," and in *Bullis School v. Justus*, 37 Md.App. 423, 377 A.2d 876 (1977), applying that principle, we affirmed a finding of permanent total disability even though the claimant was in fact gainfully employed. It is evident, therefore, that, under this more liberal view, a finding of permanent total

disability does not necessarily mean that the claimant has no useful employment capacity left to lose.

That fact, that there may indeed be a residuum of employment or industrial capability left in the claimant, is unimportant when the claimant has been or is being compensated fully for the permanent total disability. He has then received (or is receiving) the full measure of what the law permits and is entitled to nothing more. The purpose of the Act, "to provide workers compensation for loss of earning capacity resulting from accidental injury," has been served. Where the employee has been only partially compensated for his permanent total disability, however, satisfaction of the legislative intent is not so clear. If the situation were to be frozen in time, as of the initial finding of permanent total disability, appellee's position would be more compelling, for then it would indeed be clear that the claimant has received all that the law allows. But the law does not provide for such a temporal refrigeration. Section 40(b) of art. 101 provides:

> "If aggravation, diminution or termination of disability takes place or is discovered after the rate of compensation shall have been established or compensation terminated in any case, the Commission may, upon application of any party in interest or upon its own motion, readjust for future application the rate of compensation, or in a proper case, terminate the payments."

Section 40(c) provides for an even more general continuing jurisdiction. It states:

> "The powers and jurisdiction of the Commission over each case shall be continuing, and it may, from time to time, make such modifications or changes with respect to former findings or orders with respect thereto as in its opinion may be justified; provided, however, that no modification or change of any award of compensation shall be made by the Commission unless application therefor shall be made to the Commission within five years next following the last payment of compensation."

Interestingly, although both the function and structure of the workers' compensation law are founded upon the concept of "disability," that term is not specifically defined in the statute. As with most statutory terms, it takes its meaning, at least in part, from the context of its use. Thus, as used in § 40(b), the word "disability" must, of necessity, mean a *compensable* disability, i.e., a disability arising out of and in the course of employment, rather than the more global incapacity to work, for only a change in a compensable disability can warrant a change in compensation. The critical issue in a proceeding under § 40(b) is whether the disability *upon which compensation has been paid or is being paid* has changed sufficiently to justify a change in the compensation. The extent, or change in, the claimant's aggregate disability is important principally, if not solely, in measuring the relative and absolute extent of the compensable disability.

Viewed in this sense, it follows that where a permanent total disability is not attributed entirely to a compensable disability, it is possible for the compensable part of that disability—the part arising out of and in the course of the claimant's employment—to increase over time. Because there may still be a residuum of employment capacity even upon a finding of permanent total disability, an aggravation of the compensable part of the disability could conceivably increase the loss of aggregate industrial capacity, but even if it does not, the mix between the compensable and noncompensable disabilities can certainly change. The real question, then, is not whether the claimant has any industrial or employment capacity left to lose but simply whether the law permits him to be compensated in the event the compensable part of his disability increases.

To answer that question, we must return to the beneficent purpose of the law. Had appellant's left foot been amputated prior to the 1981 award, he may well have received greater compensation than he did because the Commission would presumably have found that the disability arising out of and in the course of his employment with

appellee amounted to 50% of the body rather than 25%. The extent to which the preexisting skin cancer and the aggravation of the skin cancer contributed to his overall disability would have been judged accordingly.  To preclude the Commission from even considering the effect of the amputation merely because it occurred after the 1981 award seems to us to be at odds with the whole purpose of § 40(b) and (c) in particular and the Act in general.  It would defeat, rather than promote, the compensation of workers "for loss of earning capacity resulting from accidental injury."

We do not suggest that appellant is entitled to any additional compensation; it has not yet been established that the worsening of the foot that led to its amputation was due to the accidental injury.  We do hold, however, that, in the circumstances of this case, the Commission has authority under § 40 to reopen his case and determine whether the undisputed aggravation of the injury to his foot has made a greater share of his aggregate permanent total disability attributable to the 1976 accident and, if so, to award appropriate compensation for it.  The case should be returned to the Commission for that purpose.

JUDGMENT REVERSED;  APPELLEES TO PAY THE COSTS.